UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

A.C., a minor, by MARK CARLSON and )
JULIE CARLSON, his parents, )
 )
    Plaintiffs, )
 )
    v. ) Case No. 05-4092
 )
BOARD OF EDUCATION FOR CAMBRIDGE )
COMMUNITY UNIT SCHOOL DISTRICT )
#227, )
 )
    Defendant. )

## O R D E R

This matter is now before the Court on Plaintiffs' Motion for Preliminary Injunctive Relief. For the reasons set forth below, the Motion [#4] is DENIED.

### BACKGROUND

According to the Complaint in this matter, in April 2005, Plaintiff A.C. was a junior at Cambridge High School and was involved in three different school-sponsored athletic teams. On April 5, 2005, he discharged what he contends was a toy gun at one or more students in the parking lot of the High School after school had been dismissed for the day. Following an investigation, Principal Monte Munsinger ("Munsinger") determined that the gun was not a toy, but rather a look-alike weapon, which fired small plastic BBs, and gave A.C. a ten-day academic suspension. The Athletic Council subsequently made a similar finding and imposed a 365-day suspension from all extracurricular athletic activities. Both Munsinger and the Athletic Council found that A.C.'s possession and use of the look-alike weapon constituted Gross Misconduct under the Student Handbook.

Plaintiffs bring this litigation claiming that A.C.'s due process rights were violated by the actions of the Defendant. Plaintiffs have now filed a Motion for Preliminary Injunctive Relief, asking the Court to enjoin Defendant from enforcing A.C.'s 365-day athletic suspension withholding his right to participate in school athletics. On Monday, December 19, 2005, the Court held an evidentiary hearing on the Motion during which several witnesses testified and numerous exhibits were introduced. This Order follows.

## DISCUSSION

In this circuit, injunctive relief is warranted if the movant can make a threshold showing: (1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) that no adequate remedy at law exists; and (3) that the movant will suffer irreparable harm if the injunction is not granted. Ty, Inc. v. Jones Group, 237 F.3d 891, 895 (7th Cir. 2001). If these three conditions are met, then the Court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently and consider the interest of the public in whether the injunction is to be granted or denied. Id.; see also, Duct-O-Wire Co. v. U.S. Crane, Inc., 31 F.3d 506, 509 (7th Cir. 1994); Storck USA, L.P. v. Farley Candy Co., 14 F.3d 311, 314-15 (7th Cir. 1994); Abbott Laboratories v. Mead Johnson & Co., 971 F.2d 6, 11-12 (7th Cir. 1992). The Court then sits as a court of equity, weighing all these factors and employing a sliding-scale approach. Id. That is, the more likely the plaintiff's chance of success on the merits, the less the balance of harms need weigh in its favor." Id.

Here, the Court need look no further than the first element of the test, as the Court finds that the record presented in this case does not establish that Plaintiffs have some likelihood of success on the merits of the underlying litigation. The Due Process Clause

of the Fourteenth Amendment provides that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV § 1. A procedural due process claim against government officials requires proof of inadequate procedures and interference with a liberty or property interest. Board of Curators of University of Missouri v. Horowitz, 435 U.S. 78, 82 (1978). Thus, in order to have any likelihood of success on a procedural due process claim, Plaintiffs must demonstrate that they have a protectable property or liberty interest at stake. Such interests are "are not created by the Constitution. Rather, they are created and their dimensions defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." Goss v. Lopez, 419 U.S. 565, 572-73 (1975), *citing* Board of Regents v. Roth, 408 U.S. 564, 577 (1972).

Plaintiffs contend that A.C. has a protectable property interest in continued participation in the athletic program and prospects for college scholarships attendant to such participation. In Roth, the Supreme Court clarified the parameters of a protectable property interest in the educational setting:

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

408 U.S. at 577. Given this definition, courts in other jurisdictions have repeatedly held that there is no protectable property or liberty interest in participating in interscholastic athletics. Hamilton v. Tennessee Secondary School Athletic Association, 552 F.2d 681, 682 (6th Cir. 1976), *citing* Mitchell v. Louisiana High School Athletic Association, 430 F.2d 1155, 1157-58 (5th Cir. 1970) (finding that the privilege of participating in interscholastic athletics falls outside the protection of due process); Hebert v. Ventetuolo, 638 F.2d 5, 6 (1st Cir. 1981)

(finding that since there is no property right to play interscholastic sports, there is no constitutional entitlement to any process whatsoever); Rutledge v. Arizona Board of Regents, 660 F.2d 1345, (9th Cir. 1981); Poling v. Murphy, 872 F.2d 757, 764 (6th Cir. 1989); U.S. ex rel. Missouri State High School Activities Assn., 682 F.2d 147, 153 (8th Cir. 1982); Burrows v. Ohio High School Athletic Assn., 891 F.2d 122 (6th Cir. 1989); Smith v. Chippewa Falls Area Unified School District, 302 F.Supp.2d 953, 957 (W.D. Wis. 2002) (noting that the preponderance of federal district courts considering the question have held that the opportunity to participate in extracurricular activities is not a protected property interest).   Similarly, the Illinois courts have noted that "[s]tudents can need, want, and expect to participate in interscholastic athletics, but students are not entitled to participate in them" in holding that participation in athletics does not rise to the level of a protected interest.  Jordan v. O'Fallon Township High School Dist. No. 203 Board of Education, 302 Ill.App.3d 1070, 706 N.E.2d 137, 140 (1999); Clements v. Board of Education of Decatur Public School Dist. No. 61, 133 Ill.App.3d 531, 478 N.E.2d 1209, 1210 (1985).

In support of their argument that they have a protectable property interest, Plaintiffs primarily rely on two related decisions in Butler v. Oak Creek-Franklin School District, 116 F.Supp.2d 1038 (E.D. Wis. 2000), and 172 F.Supp.2d 1102 (E.D.Wis. 2001).  With all due respect, these decisions are non-binding precedent that the Court finds to be readily distinguishable.  As previously noted, a property interest is derived from an independent source such as state statutes or rules granting an entitlement to benefits.   Goss, 419 U.S. at 572-73.  Such was the case in Butler, where the district court found that the school's student handbook, the school's Athletic Code, the rules of the Wisconsin Interscholastic Athletic Association, a state attorney general's opinion, and two state laws combined to

provide the student's entitlement to continued athletic participation. 172 F.Supp.2d at 1110. Plaintiffs have not cited, and the Court is otherwise unaware of, any analogous laws, opinions, or rules existing in the state of Illinois that could serve as the source of an entitlement. To the contrary, it would appear that Illinois courts have taken the position that there is no such rule or regulation. See Jordan, 302 Ill.App.3d at 1076 (finding that "[f]ootball is neither an integral part of a quality education nor a requirement under any rule or regulation governing education in this State. . . . Simply put, playing high school football is a privilege rather than a right." Thus, the Court must reject the suggestion that the decision in Butler properly supports Plaintiffs' position in this case.

While the Seventh Circuit has not expressly addressed this issue, two opinions involving related issues provide some indication of how the Court of Appeals might rule if it were to consider this question directly. In Schaill v. Tippecanoe County School Corp., 864 F.2d 1309, 1323 (7th Cir. 1988), the Seventh Circuit relied on the First Circuit's decision in Hebert in noting "that there is room for doubt whether a student has a constitutionally protected liberty interest in being free of the potential stigma associated with removal from an athletic team." In Todd v. Rush County Schools, 133 F.3d 984, 986 (7th Cir. 1998), the Court of Appeals also suggested that extracurricular activities, such as athletics, are only a privilege rather than a right. Accordingly, the Court finds that the Court of Appeals would likely follow the existing persuasive precedent cited above and hold that participation in interscholastic sports does not implicate any protectable liberty or property interest.

The Court therefore concludes that Plaintiffs have failed to demonstrate that they have any protectable liberty or property interest in continued participation in school

athletics. Having so found, the Court need not go on to consider to what process Plaintiffs would have been entitled or whether the process that was provided was sufficient.

Even assuming *arguendo* that continued participation in interscholastic sports could rise to the level of a protectable property interest in Illinois, on the record before the Court, it would appear that Plaintiffs received constitutionally adequate process with respect to the 365-day athletic suspension that was imposed. In Goss, the Supreme Court clarified that a student given a suspension for disciplinary infractions was entitled to "oral or written notice of the charges against him, and if he denies them, an explanation of the evidence the authorities have and an opportunity to present his side of the story." 419 U.S. at 581. These procedures need only be "rudimentary", amounting to "an informal give-and-take between student and disciplinarian." Id. at 584. A hearing is adequate even if it is conducted before a disciplinarian who "himself has witnessed the conduct forming the basis for the charge." Id.

While the version of the April 5, 2005, incident testified to by A.C. during the hearing is somewhat inconsistent with the statement that he gave to Munsinger, as reflected in Munsinger's investigation summary, the material procedural details are essentially undisputed. The evidence produced during the evidentiary hearing indicated that A.C. and/or his mother had multiple oral conversations with school officials regarding the nature of the charges against him, as well as the possible penalties at stake.[1] In a letter dated

---

[1] The Court notes that there was evidence presented with respect to oral and written communications between A.C.'s attorney and the School District regarding an agreed settlement of the disciplinary action. Although A.C. and his parents believed that this was a global settlement, the School District viewed the settlement as resolving only the question of academic discipline, not the issue of suspension from extracurricular activities. This appears to have been a good faith misunderstanding that has no bearing on the outcome of the present Motion.

April 25, 2005, Plaintiffs received written notice that the Athletic Council would convene a meeting on April 29, 2005, to consider possible disciplinary action against A.C.  During this meeting, the Plaintiffs requested a postponement of the hearing to allow the coach of A.C.'s current sport to be present, and the request was granted.  On May 3, 2005, the Athletic Council convened.  Munsinger made a presentation regarding the results of his investigation into the facts of the April 5, 2005, incident, including the basis for his conclusion that the gun was a look-alike weapon. Based on the information presented both to the Athletic Council and during the evidentiary hearing before this Court, it is clear that the gun possessed by A.C. was fairly characterized as a look-alike weapon.  Plaintiffs were given the opportunity at the Athletic Council hearing to ask questions and present evidence on their own behalf and did in fact argue that the weapon was not a look-alike and that A.C.'s actions did not rise to the level of gross misconduct.  The Athletic Council then deliberated and issued its decision to impose the 365-day athletic suspension.  Such process clearly satisfies the requirements of Goss.

It is interesting to note that, while Plaintiffs have consistently challenged the finding by the Athletic Council that the item discharged in the parking lot was a look-alike weapon rather than simply a toy gun, at no time have they offered pictures showing an item different from the pictures of the obvious look-alike weapon which Munsinger obtained from advertisements on the Airsoft website.  Said pictures were identified by students who were witnesses to the incident.  The gun itself was not available because A.C.'s father, upon learning of the incident, burned it in the firepit.

Parenthetically, the Court would note that the process, while constitutionally adequate, was not perfect.  There is evidence in the record that on April 21, 2005, the

Board of Education announced that A.C. would receive a 365-day athletic suspension after hearing testimony in executive session from only one side of the incident and without any opportunity to participate by Plaintiffs, who had been told that A.C.'s situation was not on the agenda for that meeting.  Even though it is not outcome determinative, if true, this would seem to be a fundamental breach of fairness by the Board of Education.  There was also evidence indicating that this was the first and only time that the Board of Education had ever made a recommendation to the Athletic Council as to what its decision should be and that Munsinger, who investigated and imposed the academic suspension, served as the "prosecutor" before the Academic Council and asked whether any Council member disagreed with the recommendation of the Board.  While this may in part be explained by the fact that this was also the first time that the Board had encountered a perceived weapons violation and the coach who testified during our court hearing stated that he would have reached the same conclusion even without the recommendation from the Board, these facts are nevertheless suggestive of an unnecessarily aggressive involvement by the Board.  That is especially true in view of the fact that the School District's Student Handbook appears to contemplate that the Athletic Council will act independently of any academic discipline imposed by the principal and the School Board.

Thus, the Court must conclude that Plaintiffs have not demonstrated a likelihood of success on the merits of their due process claim with respect to the 365-day athletic suspension.  Accordingly, their request for preliminary injunctive relief must be denied.

## **CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Preliminary Injunctive Relief [#4] is DENIED, first because Plaintiffs have not established a protectable liberty or

property interest giving rise to a cognizable Due Process Claim, and second because this record does not support a finding of a reasonable likelihood of success on the merits of a Due Process Claim.  This matter is REFERRED to Magistrate Judge Gorman for further proceedings.

    ENTERED this 28th day of December, 2005.

                                              s/ Michael M. Mihm
                                              Michael M. Mihm
                                              United States District Judge